445 A.2d 820

**COMMONWEALTH of Pennsylvania**

v.

**Anthony SANDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 1, 1981.

Filed May 14, 1982.

412

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Harrisburg, Deputy District Attorney, for Commonwealth, appellee.

Before BROSKY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellant was convicted of criminal attempt to commit murder after a nonjury trial in the Court of Common Pleas of Dauphin County. Post-trial motions were denied and appellant was sentenced to a term of not less than five (5) nor more than ten (10) years imprisonment. Appellant thereafter filed a petition to modify sentence which the lower court also denied. This appeal followed.

Appellant's first contention is that he did not knowingly and intelligently waive his right to a jury trial. The basis for this contention is that appellant was not adequately advised in the waiver colloquy of two of the three "essential ingredients" necessary to constitute a valid waiver under *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973) and Pa.R.Crim.P. 1101. This issue was not raised in post-trial motions and therefore the merits of this issue have not been properly preserved for appellate review. *Commonwealth v. Whitner*, 278 Pa.Super. 175, 420 A.2d 486 (1980); *Commonwealth v. O'Brien*, 273 Pa.Super. 198, 417 A.2d 236 (1979). However, appellant has couched the issue within the context of an ineffective assistance of counsel claim, in that trial counsel failed to challenge the defective colloquy in post-trial motions. Since this appeal represents the earliest opportunity at which appellant is represented by new counsel, the issue is properly before us at this time. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

The standard of review in determining whether or not counsel has rendered ineffective assistance necessitates an initial inquiry into whether the underlying claim is of arguable merit. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). If the underlying claim is found to be of arguable merit, only then may we proceed to determine whether there was some reasonable basis for counsel's ac-

tions designed to protect his clients interests. *Commonwealth v. Hubbard, supra.* If the basis for counsel's actions cannot be determined from the record, the appropriate remedy is to remand the case for an evidentiary hearing on the issue. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975).

In *Commonwealth v. Morin*, 477 Pa. 80, 383 A.2d 832 (1978), our Supreme Court held that where a defendant is not advised, on the record, of the "essential ingredients of a jury trial" the claim is not only of arguable merit but "under no circumstances can it be said that previous counsel's failure to raise this issue resulted from any reasonable strategy designed to effectuate his client's interests." *Id.*, 477 Pa. at 84, 383 A.2d at 833–834. Therefore, the court found no necessity to remand the record for an evidentiary hearing and held that the proper remedy was a new trial.

The colloquy in the instant case was as follows:

Mr. Hoover [district attorney]: Mr. Sanders, in requesting a waiver trial you give up your constitutional right to a jury trial. What that means [is that] twelve members of the Dauphin County community would come together to decide your guilt or innocence, that Mr. Federico [defense counsel] could participate in the selection of that jury and that the verdict of that jury must be unanimous on your guilt or innocence, do you understand that?

Mr. Sanders: Yes.

Mr. Hoover: How old are you?

Mr. Sanders: Twenty-five.

Mr. Hoover: How far did you go in school?

Mr. Sanders: Eleventh grade.

Mr. Hoover: Understanding all your rights to a jury trial at this time you waive that right, and request that Judge Morgan hear this case?

Mr. Sanders: Yes.

Mr. Hoover: Will the court accept the waiver.

The Court: Yes.

Appellant specifically contends that the colloquy is defective in two respects. First, instead of advising appellant of his right to a trial by a jury *chosen* from members of the community, appellant was told that twelve members of the community could *come together* to decide his guilt or innocence. Second, rather than informing appellant that *he* had the right to participate in the selection of the jury, appellant was advised that *defense counsel* could participate in the selection process.

Rule 1101 of the Pennsylvania Rules of Criminal Procedure provides in pertinent part:

> In all cases the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record.

In *Commonwealth v. Williams, supra,* our Supreme Court set forth the "essential ingredients" which are inherent in an accused's right to a jury trial. Each "essential ingredient" must appear on the record before it can be found that the accused has understood his right to a jury trial. In *Williams,* the court stated:

> These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Id.,* 454 Pa. at 373, 312 A.2d 600.

However, the *Williams* Court specifically declined to adopt a prophylactic rule to reverse convictions on the basis of noncompliance with Rule 1101, stating:

> The appellant argues that we should make a per se prophylactic rule reversing convictions for failure to comply with Rule 1101 despite the fact that a subsequent full and fair hearing proved the waiver of the constitutional right was knowing and intelligent. When we make rules for criminal proceedings, we do so in order to protect the

rights of the individual and therefore we expect strict compliance with those rules. However, a prophylactic exclusionary rule is applied only in entreme cases where all other attempts to secure compliance have proven unsuccessful. See generally *Mapp v. Ohio*, 367 U.S. 643, 651–652, 81 S.Ct. 1684 [1689–1690], 6 L.Ed.2d 1081 (1961). In this area there has been no showing of widespread flagrant disregard to justify formulation of such a rule at this time. Furthermore, where there is a subsequent proceeding in which the waiver is proven to be knowing and intelligent on the record such a prophylactic rule seems unnecessary since the purpose of the rule to insure the constitutionality of the waiver and our ability to review it, are satisfied. See *Commonwealth v. Godfrey*, 434 Pa. 532, 538, 254 A.2d 923 (1969).

(Roberts, J., concurring).

*Id.*, 454 Pa. at 372–373, 312 A.2d 599–600.

Following *Williams*, there have been a number of cases decided by this court applying the rationale therein to determine whether or not language contained in the colloquy was sufficient to advise the accused that the jury would be comprised of his peers chosen from members of his community.

In *Commonwealth v. Guenzer*, 255 Pa.Super. 587, 389 A.2d 133 (1978), appellant was told that he had "an absolute right to be tried by a jury of 12 of your peers ...." *Id.*, 255 Pa.Super. at 592, 389 A.2d at 135. The court, sitting *en banc*, found the above language satisfactory and stated:

"While the better practice may be to elaborate on the meaning of the word peers, we do not consider a failure to do so to constitute ineffectiveness of counsel."

In *Commonwealth v. Bouie*, 263 Pa.Super. 556, 398 A.2d 716 (1979), the appellant contended that failure to use the word "peers" in advising him that the jury be chosen from members of the community did not properly advise him of his right to a jury trial. President Judge Cercone, writing for this court in an *en banc* decision, stated that:

Though it is true that neither counsel nor the trial judge used the word "peers", this concept was conveyed to appellant via simple, everyday terms. On this point, the judge said to appellant, "You understand that if you choose to be tried by a jury which consists of twelve people chosen from a larger group, you would have a right to assist your attorney in selecting those twelve people. Do you understand that?"

To this appellant replied, "Yes".

Similarly, defense counsel put this question to appellant, "Do you understand it is your right to have all the facts in this case, your guilt or innocence of this offense, to be heard by a jury of twelve people who are pulled from a panel which has been empaneled?"

Appellant replied in the affirmative.

Nothing in the *Williams* decision indicates that the precise language used in *Williams* must be read to the accused as long as the "essential ingredients" of a jury trial are explained to an accused. In fact, the word "peers", while not a particularly unusual word, is not typically used in everyday language and it may be that the trial court wanted to be certain that appellant understood this concept, particularly in view of the fact that appellant did not complete high school. Therefore, we find that the lower court's failure to use the word "peers" in advising appellant of his right to a jury trial does not constitute error and so trial counsel was not ineffective for failing to raise this patently frivolous issue. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). *Id.*, 263 Pa.Superior Ct. at 558–559, 398 A.2d at 717.

Finally, in *Commonwealth v. Fortune*, 289 Pa.Super. 278, 433 A.2d 65 (1981), this court, again sitting *en banc*, held the following colloquy adequate:

Q. And that you would help with your attorney as well as the District Attorney select 12 people that would sit on that jury and all 12 of those people must be convinced beyond a reasonable doubt that you are guilty, before you could be found guilty. Do you understand that?

A. Yes, sir.

Q. Do you understand if one person of the 12 does not feel you were proven guilty beyond a reasonable doubt, you could not be found guilty by that jury. Do you understand that?

A. Yes, sir.

*Id.*, 289 Pa.Superior Ct. at 282, 433 A.2d at 67.

Judge Hester, writing for the majority, concluded that on the basis of the *en banc* decisions of this court in *Bouie* and *Guenzer*, "the lower court's failure to use the word 'peers' or 'chosen from members of the community' in advising appellant of his right to a jury trial" did not constitute error. *Id.*, 289 Pa.Superior Ct. at 290, 433 A.2d at 71.

■ In the instant case, in accordance with this court's *en banc* decisions in *Guenzer, Bouie,* and *Fortune,* we find that failure to use the word "chosen" does not render the colloquy defective, especially when the follow-up phrase in the waiver colloquy contained language to the effect that defense counsel "could participate in the *selection* of that jury." Appellant was adequately advised when told that twelve members of the community would come together to decide his guilt or innocence.

Appellant's second contention of error in the waiver colloquy presents a more difficult problem. Appellant argues that he should have been advised that *he* had the right to participate in the selection of the jury, rather than defense counsel.

■ The holding in *Williams* does not require us to take a hypothetical approach and, accordingly we believe that informing appellant that defense counsel could participate in the selection of the jury was sufficient.

It cannot be doubted that when an accused is represented by trial counsel, it is counsel who selects the jury. The colloquy in the instant case is merely a recognition of what, in fact, does occur. Moreover, the court in *Williams* cited as its authority *Commonwealth v. Fugmann,* 330 Pa. 4, 198 A. 99 (1938), and in *Fugmann* the court said:

"The essentials of a trial by jury of a defendant in a criminal case as known at common law were ... (3) an ample right of challenge both for cause and peremptorily, secured to defendant. *Id.,* 330 Pa. at 29, 198 A. 111.

Inherently, a jury trial requires that the defendant be secured the right to challenge potential jurors on the basis of cause or peremptorily. Those rights are adequately secured to an accused when they are exercised by defense counsel. The fact that an accused does not personally select the jury is not a deprivation of that right. To allow appellant at this time to successfully argue that although he knew that defense counsel could participate in the selection of the jury, but that he could not, would exalt form over substance and further muddy the waters with absurd technicalities. We do not believe that *Williams* intended such a result.

We hold, therefore, that the "essential ingredients" of a jury trial were explained to the appellant and trial counsel cannot be deemed ineffective for failing to raise this issue. The record, in our view, clearly establishes that the appellant knowingly and intelligently waived his right to a jury trial.

Appellant's next contention is that the evidence presented by the Commonwealth was insufficient to prove either that appellant was the perpetrator of the crime charged or, even if such fact was established, that his acts constituted the crime of attempted murder.

In determining the sufficiency of the evidence, we accept as true all evidence upon which the fact finder could properly have reached its verdict and give the verdict winner, in this case the Commonwealth, the benefit of all reasonable inferences therefrom. *Commonwealth v. Williams,* 468 Pa. 357, 362 A.2d 244 (1976); *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Lynch,* 227 Pa.Super. 316, 323 A.2d 808 (1974). The Commonwealth, moreover, does not have to establish guilt to a mathematical certainty and may in a proper case rely on circumstantial evidence. *Commonwealth v. Roscioli,* 454 Pa.

59, 309 A.2d 396 (1973); *Commonwealth v. Williams*, 269 Pa.Super. 544, 546, 410 A.2d 835, 836 (1979).

Viewed under this standard, the record establishes that on or about 2:30 a. m. on October 14, 1979, the victim, along with two of his friends, stopped their vehicle to investigate a confrontation occurring on the opposite side of the street. The victim, who was a passenger in the car, got out and proceeded to the area where the argument was taking place. The driver of the car also exited. The appellant, who was identified by the driver, drove up to this location, got out of a green and white car, and walked across the street with a tire iron. Apparently nothing materialized from this scene and both appellant and the victim returned to their vehicles. Appellant drove off. Minutes later, the victim, and his two friends traveled two blocks and stopped their vehicle next to appellant's parked car. At this time, appellant was viewed walking towards a house. The victim then got out of the car with a stick and proceeded to strike appellant's car two or three times. As the victim and his companions drove off they saw someone running towards them, heard several shots fired and stopped the car at an intersection. The victim, with a stick in his hand, jumped out of the car and walked towards the rear. The victim was heard to say that, "If you drop your weapon, I'll drop mine." The driver of the car noticed a shiny object in the hands of the man confronting the victim. A shot was heard and the man was seen by the victim's companions walking towards and getting into the green and white car. He then drove off. The victim was found by his friends lying in the street.

Further testimony presented at trial established that it was appellant who approached the vehicle stopped in the intersection, that a struggle ensued, that the victim hit the ground, that shots were fired and that the appellant was identified walking back to his car throwing a nickle plated pistol in the back seat before driving off. A subsequent police investigation revealed that appellant was the owner of a green car with a white top.

Criminal attempt is defined as:

§ 901. Criminal attempt.

(a) Definition of attempt.—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901.

Murder is Defined As:

█ "Murder in this Commonwealth is still governed by the Common Law definition; i.e., the unlawful killing of another with malice aforethought, expressed or implied, *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973). Although murder is delineated into murder of the first and second degree, the Common Law definition still governs and murder, whether it be of the first or second degree, is nevertheless murder. Therefore, the Commonwealth in the instant case was required only to prove intent to commit murder." [1] *Commonwealth v. Reese*, 237 Pa.Super. 326, 333–334, 352 A.2d 143, 147 (1976).

█ Reviewing the evidence under the applicable law we find it is sufficient to sustain appellant's conviction of attempted murder.

Appellant also contends that trial counsel was ineffective in failing to object to the lower court's limitation of his cross-examination of a Commonwealth witness concerning possible bias. The record, however, does not support this contention.

By Defense Counsel:

Q. And, were you promised anything to testify here today.

A. No, not really.

Q. You said no, not really. What, if anything, was said to you about—in return for testifying here today?

A. Nothing, just reimbursing me for traveling and my time.

Q. You weren't promised that

By the District Attorney: Objection to that.

---

1. Although present law in Pennsylvania provides for first, second and third degree murder, 18 Pa.C.S.A. § 2502, the Common Law definition is still applicable in this case.

A. No, I wasn't.

The Court: She said no.

██ The trial judge did not sustain the objection and the witness fully responded to defense counsel's questions. We do not understand how this amounts to a refusal by the trial judge to permit cross-examination of the Commonwealth's witness concerning potential bias. This claim is meritless and trial counsel cannot be deemed ineffective for failing to pursue it.

Finally, appellant contends that he was denied a fair trial in that the trial judge inferred guilt from his failure to testify on his own behalf. This contention is based on an alleged comment made by the trial judge.[2] This issue was not raised in post-trial motions and, as such, it has been waived. *Commonwealth v. Whitner, supra; Commonwealth v. O'Brien, supra.* Judgment of Sentence is affirmed.

---

**2.** It should be noted that on the merits of this issue, appellant's brief contains no reference to what, in fact, the trial judge said.