621 A.2d 1009

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Samuel MYERS, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1992.

Filed Feb. 5, 1993.

Reargument Denied April 2, 1993.

Stephen S. Snook, Asst. Dist. Atty., Lewistown, for Com., appellant.

Michael A. Roselle, Lewistown, for appellee.

Before DEL SOLE, POPOVICH and HUDOCK, JJ.

POPOVICH, Judge:

The Commonwealth asks us to review the order of the Court of Common Pleas of Mifflin County granting the defendant/appellee, Samuel Myers, a new trial pursuant to the Post–Conviction Relief Act.[1] We reverse.

On July 19, 1983, the defendant was charged with murder and aggravated assault in the shooting death of one Robert Walters.[2] At the completion of the case, the court instructed the jury that three types of murder were involved: first degree, third degree and voluntary manslaughter. The court explained to the jury, as herein relevant, the elements of the offenses; to-wit:

1. 42 Pa.C.S.A. § 9541 et seq. (Supp.1992).

2. As recounted in the record, at 12:30 a.m. on the 19th of July, 1983, the defendant drove to the American Legion Country Club. The victim was swimming in its pool after it had closed to the public. When the defendant arrived at the site, the victim was seated at the edge of the pool with his back to the entrance gate. The defendant walked directly behind the victim, placed the barrel of a .38 Special Revolver against the back of the victim's head and, as the victim turned his head to the left, the defendant fired the revolver with the bullet entering the left side of the victim's head. The victim fell into the swimming pool and the defendant left the scene.

At trial, the defendant asserted a defense of intoxication and that his motivation for his actions was his sister being introduced to drugs by the victim.

*In order to find the Defendant guilty of murder of the first degree, you must find that all of the following elements have been established beyond a reasonable doubt: 1. That the Defendant Samuel Myers caused the death of another person, that is, you must find that the death of Bobby Walters would not have occurred but for the Defendant's act. 2. That the killing was intentional.*

*A killing is intentional if it was by willful, deliberate, and premeditated.* A killing is willful and deliberate if the Defendant consciously decided to kill the victim; and it is premeditated if the Defendant possessed a fully formed intent to kill by the time when he acted even though there need not have been any appreciable amount of time between the time when the Defendant first conceived the idea of killing and the time when he acted.

An intentional killing, as I had defined that term for you, may be found from expressed words used by the Defendant or may be implied from words or conduct of the Defendant. *And if you find that the Defendant intentionally used a deadly weapon on a vital part of the victim's body, you my infer from this that the killing was intentional.*

\* \* \* \* \* \*

Thus you cannot find the Defendant guilty of first degree murder unless you are satisfied beyond a reasonable doubt that the Defendant was not so intoxicated or drugged at the time that he was incapable of judging his actions and their consequences or incapable of forming a willful, deliberate, and premeditated design to kill.

\* \* \* \* \* \*

Any other murder which is not murder of the first degree is murder of the third degree. In order to find the Defendant guilty of third degree murder, you must find that all of the following elements have been established beyond a reasonable doubt: 1. That the Defendant caused the death of another person. That is, you must find that the death of Bobby Walters would not have occurred but for the Defendant's act. 2. That the Defendant acted with malice.

Malice consists either of an intent to kill or to inflict great bodily harm or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, any mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm, and an extreme indifference to the value of human life. Malice may be either expressed by the Defendant or implied from his words and conduct. When a deadly weapon is intentionally used against a vital part of the human body, malice may be inferred to exist.

＊　　＊　　＊　　＊　　＊　　＊

Included in the offense of murder charged in this case is a lesser offense of voluntary manslaughter. A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. You must, therefore, consider whether the Defendant in this case acted while in a state of sudden and intense passion resulting from serious provocation by the individual killed. You must, therefore, consider whether the Defendant in this case acted while in a state of sudden and intense passion resulting from serious provocation.

Passion includes anger, terror, rage, or resentment. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. If a cooling time elapses between the provocation and the killing, the provocation will not reduce murder to voluntary manslaughter.

Consequently, you cannot find the Defendant guilty of murder unless after considering all the evidence, you are satisfied beyond a reasonable doubt that at the time of the alleged killing the Defendant was not acting under a sudden and intense passion resulting from serious provocation by Bobby Walters. However, even if you do not find the Defendant guilty of murder under the instructions I have just given to you, you may nevertheless find him guilty of voluntary manslaughter if you are satisfied beyond a rea-

sonable doubt that without lawful justification he caused the death of Robert Walters.

Reproduced Record at 5a–9a. At the completion of the instructions, neither counsel lodged any objections to the charge as read to the jury. During the course of deliberations, however, the jury requested that the court repeat the defense of alcohol necessary to reduce first degree murder to third degree murder. This was done. Also, the court recited the elements required to prove one guilty of first degree murder. Both counsel were asked, for a second time, if either one desired additional instructions to be given. No such request was made.

Before a verdict was returned, the jury had a second question seeking clarification on the law of first and third degree murder, as well as the drug defense. When the court asked if counsel had any suggestions as to his intention to read the previous instructions on murder of the first degree, third degree and voluntary intoxication as a defense, the prosecutor asked if malice was included as part of the definition of first degree murder or if the court had a separate instruction. This inquiry prompted the following exchange:

THE COURT: I don't think the word malice is used at all. They don't use the word malice at all.

[ASSISTANT DISTRICT ATTORNEY]: Isn't that the first degree instruction?

THE COURT: Nope.

[ASSISTANT DISTRICT ATTORNEY]: I think that's an important part of the charge.

THE COURT: Nothing about malice in the charge, nothing in the act about malice. It was willful, deliberate, and premeditated.

[ASSISTANT DISTRICT ATTORNEY]: Malice is an instruction on murder as opposed to manslaughter.

THE COURT: Third degree. Malice is not proof of a case in either first two degrees of murder. Malice continues to be an element in the case of murder in the third degree. Now, murder of the third degree that the Defendant acted with malice. Then we give a definition of malice.

[ASSISTANT DISTRICT ATTORNEY]: That's like the last subparagraph in the instructions, isn't it?

THE COURT: Right. When Mr. Myers gets here, we'll so instruct. [Counsel for the Defendant], do you agree with that course?

[COUNSEL FOR THE DEFENDANT]: Sounds fine to me, Your Honor.

Reproduced Record at 19a–20a. For a third time, the court defined the elements necessary to find the defendant guilty of first degree murder, the defense of intoxication and murder of the third degree. Id. at 20a–22a. Thereafter, the jurors found the defendant guilty of first degree murder and a sentence of life imprisonment was imposed after the denial of post-trial motions. Direct appeals were taken to the Superior and Supreme Courts without success.

After the appeals were exhausted, the defendant filed a pro se PCRA petition on December 21, 1989, alleging that:

The Defendant was denied Effective Assistance of Trial Counsel for not Objecting to the Charge of the Court concerning MALICE, which is a necessary element of First Degree Murder and which has to be defined to the Jury, without Malice there can be no First Degree Murder, *Commonwealth v. Weinstein*, 499 Pa. 106 [451 A.2d 1344] (1982), Malice or Malice Aforethought must be told and explained to the Jury, because without the above there can be no Murder in any degree, *Commonwealth v. Waller*, 322 Pa.Super. 11 [468 A.2d 1134] (1983). In *Commonwealth v. Griffin*, 310 Pa.Super. 39, n. 1 [456 A.2d 171] (1983) states, Murder in this Commonwealth is still governed by common law—*you must have Malice,* and the Commonwealth has to prove this element to sustain a conviction for Murder, See *Commonwealth v. Heatherington*, 477 Pa. 562 [385 A.2d 338] (1978). The District Attorney on P. 274 of Trial Tr. told the Jury that Malice was an Element of First Degree Murder and that he believed he proved Malice and therefore the Jury should convict the defendant based on Malice and that this was the Law of Pennsylvania. Therefore the Court was required to Charge on Malice or Malice Afore-

thought. Counsel on P. 305 of Trial Tr. knew of the above, in that Malice had to be Charged, but for some reason failed to request that Malice or Malice Aforethought be Charged. On P. 286 of Trial Tr. the District Attorney again tells the Jury, the defendant should be found guilt [*sic* ] of First Degree Murder based on Malice, when he said the defendant killed with a HARDNESS OF HEART, which is Malice. Without Malice or Malice Aforethought there can be no Murder, only Manslaughter. According to Pa.S.S.J.I. Nos. 15.2052A and 15.2501A, indicate that Malice must be Explained to the Jury and that Malice is an element of First Degree Murder, just as the Commonwealth told the Jury on P. 274 of Trial Tr. Also see subcommittee note on P. 2 of Pennsylvania Suggested Standard Jury Instruction No. 15.-2501A, in which it states in pertinent part, Malice must be told the [*sic* ] Jury....

Based on the foregoing facts and case law and statute law, the Court erred in not Explaining Malice or Malice Aforethought, and Counsel was Ineffective for not objecting to this Error under Pa.R.CRIM.P. 1119(B) and *Commonwealth v. Griffin,* 271 Pa.Super. 228 [412 A.2d 897] (1978). The above Errors of Counsel and the Court denied the defendant a Fair Trial and highly prejudiced him.

See Record at 23–24. Counsel, unassociated with prior counsel, was appointed to represent the defendant.

On March 30, 1992, a PCRA hearing was conducted wherein the focus was "whether Tr. Counsel was ineffective for not objecting to the Court's failure to charge the jury on the issue of malice." Defendant's Brief at 1. It was the defendant's position that trial counsel had no reasonable basis for not objecting to the "malice-less" instruction given that it was "a vital component in making out a first degree murder charge ... [and] the truth determining process was circumvented ... as a consequence thereof...." The PCRA court agreed and awarded a new trial. This appeal followed by the Commonwealth.

 Before addressing the merits of the Commonwealth's claim, we need to decide the appealability of the order

since, generally, the award of a new trial is interlocutory. An exception exists, however, when the Commonwealth's appeal concerns a question of law. See *Commonwealth v. Rawles,* 501 Pa. 514, 462 A.2d 619, 621 (1983); Pa.R.App.P. 311(a)(5). In the present matter, we find the Commonwealth's challenge to be one involving a question of law, i.e., did the jury instruction satisfy the court's obligation under the law to convey an accurate, clear and proper charge on murder of the first degree so as to exonerate trial counsel from any allegation of ineffectiveness? We believe it did do so.

■ In assessing trial counsel's stewardship, we look to a tri-partite test: 1) whether the claim asserted was of arguable merit; 2) whether counsel lacked any reasonable basis for his actions or inactions; and 3) whether the complainant was prejudiced by counsel's actions or inactions. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

■ To start with, the fact that the propriety of the jury instruction had not been raised prior to the PCRA petition did not render it waived because that was the first occasion that counsel other than counsel whose effectiveness was being questioned represented the defendant. Thus, the issue was preserved for review. See *Commonwealth v. Hare,* 486 Pa. 123, 404 A.2d 388 (1979); *Commonwealth v. Knight,* 421 Pa.Super. 485, 618 A.2d 442 (1992); *Commonwealth v. Stanton,* 316 Pa.Super. 397, 463 A.2d 19, 20 (1983); *Commonwealth v. Sanders,* 299 Pa.Super. 410, 445 A.2d 820 (1982).

We now examine the merits of the Commonwealth's objection to the grant of a new trial on the ground that the trial court's charge to the jury was improper. Defendant argues that the trial court erred in failing to charge the jury on the element of malice in relation to the first degree murder charge, and that the jury, therefore, was unable to determine rationally whether he was guilty of first degree murder.

■ In evaluating the correctness of a jury charge, the charge must be read in its entirety and the general effect of the charge controls. *Commonwealth v. Zettlemoyer,* 500 Pa.

16, 454 A.2d 937, 953 (1982); *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). The portion of the instructions at issue relates, as reproduced supra, to the court's advising the jury that a first degree murder conviction could be returned provided the Commonwealth established that the defendant caused the death of Robert Walters and that the killing was intentional, i.e., willful, deliberate and premeditated.

Also, the jury was instructed that "intent" could be inferred from the use of a deadly weapon on a vital part of the victim's body. As for the charge of third degree murder, the elements recounted by the court were identical to those recited for first degree murder save for substituting proof of "malice" for "intent".

■ We find that the jury charge, when read as a whole and in light of the applicable law, was proper and did not violate established case law. For example, in *Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584 (1990), Superior Court was reversed for holding that the evidence was not sufficient to sustain the jury's verdict of first degree murder; a remand was directed for a new trial on the charge of voluntary manslaughter only. In the course of its ruling, the Supreme Court wrote:

> Pursuant to our Crimes Code, "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. § 2501(a). "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). An intentional killing is defined as "[k]illing by means of poison, or by lying in wait, or by any other kinds of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2501(d). *In order to convict a defendant of murder of the first degree, the Commonwealth must prove beyond a reasonable doubt that (1) the defendant has killed another (2) willfully, deliberate-*

*ly and with premeditation (otherwise referred to as with malice), and (3) without lawful justification.*[3]

Id. at 560, 574 A.2d at 588 (Emphasis added). Accord *Commonwealth v. Lee,* 401 Pa.Super. 591, 585 A.2d 1084, 1089 (1991).

Moreover, when the trial court directed that the "intent" element of first degree murder could be satisfied by the use of a deadly weapon on a vital part of a person's body, this was the equivalent of saying that "malice" could be inferred from such conduct as well. Our Supreme Court stated as much when it wrote in *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30, 36 (1976):

> Our cases have permitted the fact that an actor uses a dangerous weapon on a vital part of the body by another human being to justify a jury finding, 1) that the actor possessed the requisite malice required in common law murder, and 2) that the act was committed pursuant to a specific intent to kill.

One of the earliest formulations of this dual purpose inference is found in the charge given to the jury and approved by this Court in the landmark decision of *Commonwealth v. Drum,* 58 Pa. 9 (1868):

> "The proof of the intention to kill, and of the disposition of mind constituting murder in the first degree, under the Act of Assembly, lies on the Commonwealth. But this proof need not be express or positive. It may be inferred from the circumstances. If, from all the facts attending the killing, the jury can fully, reasonably, and satisfactori-

---

**3.** For edification purposes, we would note that the words "willfully or premeditatedly" in the killing of another person were substituted for the words "malice aforethought" in the Act of 1682, the first statute which abolished the death penalty for all offenses except murder. See *Commonwealth v. Carbone,* 375 Pa.Super. 261, 544 A.2d 462, 466 n. 1 (1988), rev'd on other grounds, 524 Pa. 551, 574 A.2d 584 (1990).

The third adjective—"deliberate"—surfaced in the Act of 1794, a term with its origin from the memoir of Justice Bradford who, in 1792, prepared for the Governor of Pennsylvania the research papers and recommendation which formed the basis of the Act of 1794 Id. The precursor to the present statute at 18 Pa.C.S.A. § 2502.

ly infer the existence of the intention to kill, and the malice of heart with which it was done, they will be warranted in so doing. He who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, as an axe, a gun, a knife or a pistol, must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. He who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly, or from a bad heart. Therefore, he who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without any sufficient reason or cause of extenuation, is guilty of murder in the first degree." Id. at 16.

At bar, the manner in which the killing occurred, i.e., a placement of a gun to the head of the victim by the defendant and the firing of it was consistent with a finding by the jury that the killing was committed with specific intent and willfully, deliberately and with premeditation (otherwise referred to as with malice). *Carbone,* supra; *Lee,* supra.

█ Ergo, we hold that the *language* utilized by the trial court in its charge, when viewed as a whole, explained accurately the essential elements necessary to find the defendant guilty of murder in the first degree. Contrast *Commonwealth v. Heatherington,* 477 Pa. 562, 385 A.2d 338 (1978).

Therefore, we find that objecting to the first degree murder charge on the ground that "malice" was not defined would have been meritless. *Stanton,* supra. Since counsel cannot be found ineffective for failing to advance a meritless claim, *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), we find no merit to the appellee's ineffectiveness of counsel issue. Accordingly, the PCRA court erred in awarding the

appellee a new trial.[4]

Order reversed.

4. Even if we assume that the charge of first degree murder was erroneous, we are of the opinion that trial counsel may reasonably have believed that the charge was to the advantage of appellee since its effect was to limit the legal basis upon which the jury could return a verdict of murder in the first degree. Failure to interpose an objection, therefore, could have been a product of trial strategy and not of inadequate representation. *Commonwealth v. DeBose*, 501 Pa. 399, 461 A.2d 797 (1983); *Commonwealth v. Nole*, 461 Pa. 314, 336 A.2d 302, 305 (1975).