503 S.E.2d 468

**James A. PAULING, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 24811.

Supreme Court of South Carolina.

Submitted May 27, 1998.

Decided July 13, 1998.

Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense; and Tara Dawn Shurling, Columbia, for petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Teresa A. Knox, Columbia, for respondent.

BURNETT, Justice:

Petitioner was convicted of first degree burglary and first degree criminal sexual conduct (CSC). He received a life sentence for burglary and a thirty-year sentence for CSC. This Court granted a writ of certiorari to review the decision of the post-conviction relief (PCR) judge denying petitioner's PCR application. We reverse.

## ISSUE

Did the PCR judge err in holding trial counsel was not ineffective for failing to introduce the triage nurse's notes or

to interview and prepare the triage nurse as a defense witness?

## FACTS

At trial, the fifty-five-year-old victim testified a man who identified himself as Jimmy Copeland knocked on the back door of her apartment. The victim did not know Jimmy Copeland and did not let the man inside.

Later, the man returned, broke into her second floor bathroom window, and entered her apartment. The victim testified she struck the man with a glass vase which broke and cut her right hand; the man then choked her, tied her up, and hit her in the mouth. Thereafter, the victim stated the assailant took off her clothes and "put hisself (sic) into me." The victim did not know whether the assailant ejaculated. The victim described the perpetrator as seven feet tall and in his nineties.[1]

After receiving a call from neighbors, the police arrived at the victim's apartment. The assailant ran upstairs and out the bathroom window. The police apprehended petitioner within minutes after he fled the victim's apartment.

Dr. Elizabeth Pernal testified she performed the rape protocol examination. She testified she found no lesions, cuts, or tears while performing a pelvic examination on the victim. Dr. Pernal further stated she found no semen, but this was not unusual since the victim had stated the assailant had not ejaculated. She testified the victim had a swollen jaw, an abrasion on her forehead, and a bloody laceration on her right palm.

On cross-examination, Dr. Pernal stated the victim told her she had been assaulted by an elderly man. Referring to the notes of a triage nurse, defense counsel asked Dr. Pernal if the victim had told one of the nurses there had been no actual penetration. The doctor testified she did not know what the victim had told the nurse, but the victim had told her the assailant "did not enter all the way." At this point, the trial judge sustained the prosecution's objection on the basis of hearsay.

---

1. Petitioner is 5'10" and was twenty-seven years old.

At the PCR hearing, petitioner introduced the triage nurse's notes which stated: "pt states pt did not penetrate the vagina. Was hit in face and laceration rt hand." Petitioner argued trial counsel was ineffective because he was not prepared to present the triage nurse as a defense witness.

Defense counsel testified he did not attempt to identify the triage nurse prior to trial. He agreed the nurse's testimony concerning the victim's statement would have been substantive evidence that a sexual battery did not occur and evidence to impeach the victim's credibility.

In the Order of Dismissal, the PCR judge determined petitioner failed to establish he was prejudiced by trial counsel's failure to call the triage nurse as a defense witness. The judge concluded petitioner did not establish prejudice because the triage nurse had no independent recollection of this case.[2]

## DISCUSSION

In a post-conviction proceeding, the burden is on the applicant to prove the allegations in his application. *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). As to allegations of ineffective assistance of counsel, the applicant must show his counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, there is a reasonable probability the result at trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Johnson v. State, supra.* This Court must affirm the findings of the PCR judge if they are supposed by any evidence in the record. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

At the PCR hearing, petitioner did not allege counsel was ineffective for failing to introduce the triage nurse's notes at

---

2. The record indicates there was confusion in locating the triage nurse for the PCR hearing. The PCR judge allowed petitioner ten days in which to locate and depose the nurse. The Order of Dismissal states "[c]ounsel for the Applicant has informed this Court that she has located the nurse. However, the nurse has indicated that she has no independent recollection of this case."

trial. Accordingly, this issue is not preserved for review. *Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992).

■ However, we conclude counsel's failure to call the triage nurse as a defense witness was deficient and petitioner was prejudiced by this deficiency. While there was overwhelming evidence petitioner had broken into the victim's home,[3] the only evidence of a sexual battery was the victim's testimony. There was no corroborating physical evidence of penetration or any forensic evidence of a sexual assault. The triage nurse's testimony of the victim's statement shortly after the assault would have been crucial, both as substantive evidence that a sexual battery did not occur (and, therefore, there was no CSC)[4] and as evidence to impeach the victim's credibility.[5] Even defense counsel admitted the nurse's testimony was critical. *Martinez v. State*, 304 S.C. 39, 403 S.E.2d 113 (1991) (where trial counsel admits the testimony of a certain witness may have made the difference in obtaining an acquittal, the Court may find ineffective assistance).

■ Relying on *Glover v. State*, 318 S.C. 496, 458 S.E.2d 538 (1995), the State maintains petitioner failed to meet his burden of proof because the triage nurse did not testify at the PCR hearing.

The State misconstrues *Glover*. In *Glover* the Court held "[i]n order to support a claim that trial counsel was ineffective for failing to interview or call potential alibi witnesses, a PCR applicant must produce the witnesses at the PCR hearing *or otherwise introduce the witnesses' testimony in a manner consistent with the rules of evidence*." (emphasis added). *Id.* at 498–99, 458 S.E.2d at 540.

---

3. Not only did the police apprehend petitioner while he was fleeing the victim's apartment, but a footprint found in the apartment matched petitioner's shoes.

4. First degree CSC requires a "sexual battery." S.C.Code Ann. § 16–3–652(1) (1985). A "sexual battery" is "any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body ...". S.C.Code Ann. § 16–3–651(h) (1985).

5. During its deliberations, the jury requested to hear the testimony of the victim and the doctor.

At the PCR hearing, petitioner presented evidence as to the nature of the nurse's testimony by introducing her triage notes. This evidence is sufficient under *Glover*.

 Similarly, the PCR judge concluded petitioner failed to establish prejudice because the triage nurse had no independent recollection of the case. The nurse's notes, however, could have been used to refresh her recollection at petitioner's trial.[6]

The findings of the PCR judge are not supported by any evidence of record. *Holland v. State*, 322 S.C. 111, 470 S.E.2d 378 (1996) (where there is no probative evidence to support the PCR judge's findings, the findings should not be upheld). Accordingly, the order of the PCR judge is reversed and petitioner's CSC conviction is vacated.

**REVERSED.**

FINNEY, C.J., TOAL, MOORE and WALLER, JJ., concur.

---

**6.** In any event, petitioner's trial was held in May 1992, one and one-half years after the alleged assault. The nurse may have remembered this case at that time. The PCR hearing was held more than five years after the assault.