511 S.E.2d 62

**Wilson A. PALACIO, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 24884.

Supreme Court of South Carolina.

Submitted Oct. 21, 1998.

Decided Jan. 18, 1999.

Rehearing Denied Feb. 22, 1999.

508

Attorney General Charles M. Condon; Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Teresa A. Knox; and Assistant Attorney General Matthew M. McGuire, all of Columbia, for petitioner.

Thomas J. Quinn, of Beaufort, for respondent.

TOAL, Justice:

In this application for post-conviction relief ("PCR"), the PCR court granted the applicant a new trial, finding ineffective assistance of counsel. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

On the morning of October 30, 1991, Charleston detectives Vanhorn and Warren followed a woman named Kerri Johnson to the Amtrak station in North Charleston. Police initiated the surveillance of Johnson as a result of a tip from a phone call received by police earlier that morning. At the Amtrak station, police followed Johnson into the train depot. At approximately 7:15 a.m., a train arrived from New York. Police observed Johnson greet Wilson Palacio ("Defendant") as he departed the train.

The detectives approached Johnson and Defendant after they exited the train depot. Detective Vanhorn identified himself as a police officer and told Defendant that he suspected Defendant was transporting illegal narcotics. Vanhorn asked permission to search Defendant's person and luggage. Vanhorn testified that Defendant said "yes" to the search. Defendant was not yet under arrest.

Detective Warren uncovered a boot while searching Defendant's luggage. According to Vanhorn, when the detective picked up the boot, Defendant stated, "you got it." Detective Warren pulled out an aluminum foil bundle containing cocaine. Defendant was immediately placed under arrest.

After police arrested Defendant, he repeatedly told them that Johnson was his girlfriend, and she knew nothing about

the drugs. At the police station, Defendant was advised of his *Miranda*[1] rights. The detectives told Defendant that they could not let Johnson go unless he gave them a written statement. Defendant subsequently waived his *Miranda* rights and dictated a statement to Detective Vanhorn. In the statement, Defendant explained he picked up nine ounces of cocaine in New York and was to be paid $1500 upon arriving in Charleston.[2] Defendant signed the statement.

In 1993, Defendant was indicted for trafficking more than 100 grams of cocaine and for conspiracy to traffic in cocaine. The State later dismissed the conspiracy charge, leaving only the trafficking charge. A jury found Defendant guilty of trafficking cocaine under S.C.Code Ann. § 44–53–370 (Supp. 1997).[3] Defendant was represented by Tara Anderson ("Attorney") at trial. The trial judge sentenced Defendant to twenty-five years in prison and a $50,000 fine. *See* S.C.Code Ann. § 44–53–370(e)(2)(c) (Supp.1997).[4]

Defendant appealed his conviction and sentence. In an unpublished opinion, the Court of Appeals affirmed the verdict and sentence. *State v. Palacio*, 95–UP–209 (Ct.App.1995).[5] On December 12, 1995, Defendant submitted his application

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Defendant later revealed that he was transporting the drugs for his uncle Mario.

3. This section provides that it is unlawful for any person "to manufacture, distribute, dispense, deliver, purchase, or aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance."

4. This section provides: "one hundred grams or more, but less than two hundred grams, a mandatory term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of fifty thousand dollars."

5. Defendant raised the following arguments before the Court of Appeals: (1) the trial judge erred in failing to grant his motion for a continuance; (2) the trial court erred when it denied his motion to suppress his written statement given to police; (3) the trial court erred when it allowed the State to dismiss the conspiracy indictment against him and proceed only on the trafficking charge; and (4) the trial court's reasonable doubt instruction was unconstitutional.

for PCR. The PCR court granted the application, finding ineffective assistance of counsel. The PCR court ordered a new trial. We granted the State's petition for a writ of certiorari to consider the following issues:

(1) Did the PCR court err in finding Attorney ineffective for failing to obtain or request all documents necessary for trial?

(2) Did the PCR court err in finding Attorney ineffective for failing to challenge the State's search of defendant based on lack of probable cause?

(3) Did the PCR court err in finding Attorney ineffective for failing to challenge the State's chain of custody?

(4) Did the PCR court err in finding Attorney ineffective for failing to use a peremptory strike during jury selection?

(5) Did the PCR court err in finding Attorney ineffective for failing to request a jury charge discussing the dismissal of the State's conspiracy charge?

## Law/Analysis

### A. Standard of Review

In PCR proceedings, the applicant has the burden of establishing his entitlement to relief. *Butler v. State,* 286 S.C. 441, 334 S.E.2d 813 (1985). Where allegations of ineffective assistance of counsel are made, the question becomes, whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.*

Pursuant to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court applies the following two-pronged test when considering a claim of ineffective assistance of counsel: (1) the applicant must show his counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's error, there is a reasonable probability the result at trial would have been different. *Jackson v. State,* 329 S.C. 345, 495 S.E.2d 768 (1998). A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. *Id.*

■ In reviewing a PCR grant, we are concerned only with whether there is any evidence of probative value to support the PCR judge's decision. If any evidence of probative value is found, this Court must affirm the ruling of the PCR court. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

## B. DISCOVERY REQUESTS

The State argues that the PCR court erred in finding Attorney ineffective for failing to obtain all necessary documents before trial. We agree.

■ The PCR court found that the solicitor supplied Attorney with documents at 5:00 p.m. on the Friday before the trial began on Monday. Attorney also did not receive certain documents until the morning of the trial. These documents included receipts and witnesses' statements. Additionally, the PCR court found that on the morning of the trial, the solicitor informed the trial court that there were witnesses' statements in his file that he was not going to turn over to the defense. Attorney moved for a continuance so that she could review the materials. In arguing for a continuance, Attorney emphasized to the trial judge that on September 15, 1993, she made a motion for discovery pursuant to Rule 5, SCRCrimP and *Brady v. Maryland.*[6] She had also filed a supplemental discovery request on October 8, 1993, because she believed there was a history of Charleston solicitors not providing complete discovery. The trial court denied the continuance.

At the PCR hearing, Attorney conceded she failed to make a request for the trial court to conduct an *in camera* review of any of the documents. She stated at the PCR hearing, "All I did was make the motion for a continuance and/or dismissal based on the lack of evidence being provided to me and the lack of compliance to the *Brady* and discovery motion." The PCR court held that Attorney was ineffective for failing to obtain the documents in a more timely fashion or in requesting that the trial court review the unproduced documents to determine if they were, in fact, discoverable. We disagree.

It is undisputed that Attorney made several discovery motions weeks before the trial and argued at length for a

---

6. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

continuance. On direct appeal, the Court of Appeals found that the trial court did not err in denying the continuance. The court stated it could not determine whether the evidence was material because it was not produced in the record. The court nonetheless held that based on the solicitor's descriptions of the documents to the trial court, the documents appear to have involved only inculpatory evidence. As for the witnesses' statements that were allegedly never turned over by the solicitor, the Court of Appeals held these statements were not subject to discovery under Rule 5, SCRCP. We therefore find no evidence indicating Attorney's performance fell below an objective standard of reasonableness.

Yet, even if Attorney were deficient in this regard, Defendant has failed to satisfy the second prong of *Strickland.* The second prong of *Strickland* requires a showing that the deficient performance prejudiced the defendant to the extent that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Jackson, supra.* Since the contents of these documents were never revealed at the PCR hearing, Defendant has failed to present any evidence of probative value demonstrating how the failure to obtain the unproduced statements or acquire the other documents in a more timely fashion prejudiced the defense. *Id.* (mere speculation and conjecture on the part of a defendant in PCR is insufficient).

We therefore reverse the PCR court on this issue, finding no evidence of probative value to support the PCR court's decision. *See Cherry, supra.*

## C. Search & Seizure

The State argues that the trial court erred in finding Attorney ineffective for failing to challenge the search of Defendant at the train station. We agree.

The PCR court found that Attorney failed to raise "to the trial court by motion or argument the question of what probable cause or, if the circumstance had been appropriate, reasonable suspicion, provided police grounds to detain or search Defendant." The PCR court noted there was nothing in the trial transcript to allow the trial judge to assess the reasonableness of the search or whether the information relied

upon by the police was credible. The PCR court concluded Attorney's failure to challenge the search denied Defendant a full and fair trial.

Detective Vanhorn testified at trial that Defendant provided consent to search his luggage at the train station. Further, Defendant signed a written statement stating he consented to the search.

The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. *United States v. Durades*, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. *United States v. Zapata*, 997 F.2d 751 (10th Cir.1993). On a motion to suppress, the State has the burden of proving the validity of the consent. *Id.*

At trial, Defendant never contradicted the State's evidence that he voluntarily consented to the search. Moreover, no evidence was presented at the PCR hearing to demonstrate that Attorney had access to information at trial that would have impugned the State's assertion of voluntary consent. At the PCR hearing, Defendant simply denied ever giving consent for the search.[7]

The PCR court held that Attorney should have challenged the search to determine if police had probable cause or reasonable suspicion to conduct the search, or if exigent circumstances existed. However, it would have been futile for Attorney to have made such arguments since the State's

---

7. Defendant takes the position on appeal that Attorney should have put the government to its burden of proof to show facts sufficient to establish that consent was freely and intelligently given. However, the State presented ample evidence at trial demonstrating that Defendant's consent was voluntary. Such evidence included the testimony of detective Vanhorn and the statement signed by Defendant. In addition, at the PCR hearing, Defendant simply denied ever giving consent. Defendant did not argue or present facts demonstrating that his consent was not voluntary. Moreover, the PCR court did not rule on this issue. Thus, it is not preserved for appellate review. *Pauling v. State*, 331 S.C. 606, 503 S.E.2d 468 (1998).

theory for the search was *consent,* not probable cause or exigent circumstances. Thus, Defendant has failed to demonstrate how Attorney was deficient in this regard.

We reverse the PCR court on this issue because there is no evidence of probative value to support the PCR court's decision.

### D. CHAIN OF CUSTODY

■ The State argues that the PCR court erred in finding Attorney ineffective for failing to challenge the chain of custody of the cocaine. We agree.

At trial, Detective Vanhorn testified that the cocaine recovered from Defendant weighed 256.5 grams; this included the weight of two "Zip Lock" bags within which the cocaine was stored. A drug chemist with SLED later testified that when she received the cocaine, it weighed 250.3 grams. The chemist explained this was the weight of the cocaine without the plastic bags. Attorney made a motion challenging the chain of custody of the drugs. She argued it was impossible for the plastic bags to weigh more than six grams. The trial court denied the motion, stating that some of the cocaine had been removed for testing, and there was no evidence of what the plastic bags actually weighed. The PCR court found Attorney ineffective for failing to have the bags and drugs independently weighed.

Defendant did not present any evidence at the PCR hearing regarding the actual weight of the plastic bags. Thus, there is no evidence that Defendant was prejudiced by Attorney's failure to have the bags or drugs independently weighed. *See Jackson, supra* (mere speculation and conjecture on the part of a defendant in PCR is insufficient).

Moreover, there is no reasonable probability the result of the trial would have been different had Attorney's performance not been deficient. At trial, Defendant admitted he was transporting nine ounces of cocaine into South Carolina from New York for his uncle Mario. Defendant stated that his uncle was paying him $1500 per trip to get the cocaine. Defendant claimed he needed the money to buy cocaine for his own consumption. Under cross-examination by the solicitor, Defendant provided the following testimony:

Q. So then your testimony here today is that number one, you had the cocaine on you? In your possession?

A. Yes.

Q. Your testimony number two is, that you were being paid to deliver the cocaine to somebody in Charleston?

A. Precisely.

Q. And number three, you were using that money that you were making to support your drug habit?

A. Certainly.

Q. So you, in fact, were trafficking in cocaine?

A. Nope, I wasn't trafficking.

Q. Do you realize that the law makes it illegal to have that much cocaine in your possession, regardless of what you were going to do with it?

A. Well, to my understanding, trafficking—it's been dealing—

Thus, even if Attorney had independently weighed the cocaine and plastic bags at trial and thereby revealed some discrepancy, there is no reasonable probability the result of the trial would have been different. We therefore reverse the PCR court on this issue.

### E. PEREMPTORY STRIKES

▮ The State argues the PCR court erred in finding Attorney ineffective for failing to use a peremptory strike during jury selection. We agree.

Defendant testified at the PCR hearing that he specifically instructed Attorney to strike juror Lewis Joseph because Joseph was a lawyer, and Attorney refused to do so. Attorney testified she could not recall having any conversation with Defendant concerning Joseph.

The PCR court found Attorney ineffective for failing to follow her client's wishes in this regard. Without citing any authority, the PCR court found that the selection of a jury is a defendant's right and not trial strategy left to counsel. The court noted it was impossible in South Carolina to ever determine what prejudice a particular juror brought to the

outcome of the case as it is improper to violate juror discussions.

While this issue has not been addressed in South Carolina, other courts have held jury selection is a process that inherently falls within the expertise and experience of trial counsel. *See, e.g., People v. McKenzie,* 34 Cal.3d 616, 194 Cal.Rptr. 462, 668 P.2d 769 (1983); *State v. Cosey,* 873 P.2d 1177 (Utah Ct.App.1994). "The selection of a jury is inevitably a call upon experience and intuition. The *trial lawyer* must draw upon his own insights and empathetic abilities." *Romero v. Lynaugh,* 884 F.2d 871, 878 (5th Cir.1989) (emphasis added). In *Commonwealth v. Sanders,* 299 Pa.Super. 410, 445 A.2d 820 (1982), the Pennsylvania Supreme Court held:

Inherently, a jury trial requires that the defendant be secured the right to challenge potential jurors on the basis of cause or peremptorily. Those rights are adequately secured to an accused when they are exercised by defense counsel. *The fact that an accused does not personally select the jury is not a deprivation of that right.*

445 A.2d at 824 (emphasis added). Moreover, this Court has held that a criminal defendant has no right to a trial by any particular jury, but only a right to a trial by a competent and impartial jury. *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997).

In the instant case, under the PCR court's analysis, a criminal defendant could demand that his attorney strike a juror, and if the attorney refused, the defendant could insure that any conviction would automatically be reversed. We decline to follow this logic. In PCR proceedings, a defendant must provide credible evidence that the trial attorney's refusal to strike a juror prejudiced the defense. There has been no such showing in this case. Therefore, we reverse the PCR court on this issue.

### F. JURY CHARGE

■ The State argues that the PCR court erred in finding Attorney ineffective for failing to request a jury charge discussing the dismissal of the State's conspiracy charge. We agree.

The State originally indicted Defendant for trafficking cocaine and conspiracy to traffick cocaine. At the beginning of the trial, the trial judge instructed the jury that Defendant had been indicted for these two offenses. The State later moved to dismiss the conspiracy charge, which the trial court granted over defense counsel's objection.

The PCR court found that Attorney was ineffective for failing to request an instruction concerning the dismissal of the conspiracy charge. The PCR court held the jury, not knowing why the conspiracy charge was removed from their consideration, reasonably could have been left with the belief that if they thought Defendant was guilty of conspiracy, then he was also guilty of trafficking cocaine.

It is conjecture, at best, to suggest the jury thought this way. Additionally, prior to opening arguments and after closing arguments, the trial judge specifically informed the jury that Defendant was only charged with trafficking in cocaine. Attorney also made the following statement during her closing arguments to the jury: "[Defendant] says I helped my uncle, but that's conspiracy, that is not trafficking, it's a whole other statute. It's not the one for which he's been indicted for. And that is trafficking in cocaine."

We reverse the PCR court on this issue because there is no evidence of probative value to support the PCR court's decision.

### Conclusion

Based on the foregoing, the PCR court is **REVERSED.**

MOORE, WALLER and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent, and would affirm the grant of post-conviction relief (PCR) to respondent. We are required to affirm the circuit court's PCR order if it is supported by any evidence in the record. *Pauling v. State,* 331 S.C. 606, 503 S.E.2d 468 (1998). In my opinion, the order's finding regarding defective representation and resulting prejudice from trial counsel's failure to request a jury instruction regarding the

dismissal of the conspiracy charge is supported by the evidence and we should not, and properly cannot, overturn it. I would affirm.