763 S.E.2d 630

**Steve BAGWELL, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**Appellate Case No. 2010–173947.**

**No. 5267.**

Court of Appeals of South Carolina.

Heard June 3, 2014.

Decided Aug. 27, 2014.

Rehearing Denied Oct. 21, 2014.

Deputy Chief Appellate Defender Wanda H. Carter, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Karen Christine Ratigan, both of Columbia, for Respondent.

LOCKEMY, J.

In this appeal from the denial of his post-conviction relief (PCR) application, Steve Bagwell argues the PCR court erred in finding his trial counsel was not ineffective for (1) failing to request DNA testing for blood found on glass recovered at the crime scene and (2) failing to argue a witness's testimony was admissible to show evidence of a victim's bias and motive to fabricate testimony. We reverse and grant Bagwell a new trial.

## FACTS

This case involved an alleged burglary at an apartment complex in Greenville County. At trial, Jarrett Armstrong testified he and his roommate Chris Snoddy (collectively, the

victims) were on their way home from work one night, when he received a call from a neighbor that caused them to hurry home. Armstrong testified that when they arrived, a large crowd was gathered outside their apartment. According to Armstrong, he entered the front door of the apartment and saw Bagwell, whom Armstrong had known since elementary school, exiting through the back glass patio door, which was shattered. Armstrong stated he did not see Bagwell's room-mate, Daryl[1] Spain, inside the apartment and he did not punch Daryl.

Armstrong, however, testified he confronted Bagwell out-side Bagwell and Daryl's apartment and punched Bagwell in the face. According to Armstrong, Bagwell's face was scarred with "blood coming down" before Armstrong punched him. The State admitted a photograph of Bagwell taken after the burglary, which shows blood streaming down the left side of his face. On cross-examination, Daryl's counsel asked Arm-strong, "This gash that [Bagwell] had on his forehead . . . isn't it true that [Bagwell] received that gash when you hit him on the forehead with a handgun?" Armstrong replied, "No, sir."

Snoddy testified he saw Daryl exiting the apartment through the glass patio door; however, he stated he did not see Bagwell inside the apartment. Snoddy further testified Armstrong and Bagwell began fighting in front of Bagwell and Daryl's apartment. Snoddy also stated Bagwell had "blood or a scratch" down his face before Armstrong punched him.

Bagwell testified in his defense.[2] According to Bagwell, he was asleep in his apartment at the time of the burglary, and he awoke to find Armstrong "beating on [him]" and accusing Daryl of breaking into Armstrong and Snoddy's apartment.

After Armstrong left his apartment, Bagwell called the police and reported that Armstrong had broken into his apartment. Bagwell testified he then looked outside and saw Armstrong beating Daryl and holding a gun to his head.

---

1. Spain's name is spelled "Darryl" throughout the appendix; however, it is spelled "Daryl" on the South Carolina Department of Corrections website. We refer to him as Daryl in this opinion.

2. Daryl did not testify at trial.

Bagwell further explained that his face was bleeding after the incident because Armstrong attacked him.

During its closing argument, the State asserted,

Some other testimony that's important for you to remember. If you remember both [Snoddy] and [Armstrong] said that when they went over to [Bagwell]'s apartment and he was out front, when they went over there they both saw a scratch on his top eye and blood. A little blood trail coming down the side of [Bagwell's] face. Now how did he get that? How did [Bagwell] get that? How did he get this right here? How did he get this cut? One way he could have gotten this cut, ladies and gentlemen, one way is if when he ran out, ran through the glass in a hurry, see the arc on this glass? He could have cut his eye when he was running out. When [Armstrong] startled them when they came back.

Subsequently, the jury convicted Bagwell and Daryl of first-degree burglary. The trial court sentenced Bagwell to twenty years' imprisonment and Daryl to fifteen years' imprisonment.

At the PCR hearing, Bagwell's PCR counsel introduced DNA test results indicating blood found on three pieces of glass recovered from the victims' glass patio door did not match Bagwell.[3] Bagwell alleged his trial counsel was ineffective for failing to request DNA testing for the glass prior to trial.

Bagwell testified trial counsel never informed him the State had the blood samples at the time of his trial. Trial counsel admitted she knew the State had the blood samples prior to trial, but she did not request DNA testing. Trial counsel explained the State originally planned to test the samples, but another solicitor took over the case and decided not to follow through with testing. Trial counsel admitted the test results "may have affected" the outcome at trial; however, she stated the test results would not have excluded the possibility of Bagwell's guilt. Trial counsel further stated that during its closing argument, the State "probably" displayed a picture of the broken glass door in front of the jury. Finally, trial

---

3. The test results do not indicate who the DNA belonged to.

counsel asserted Bagwell's trial was essentially a "swearing match" between the victims and defendants.

The PCR court found trial counsel was not ineffective for failing to seek DNA testing of the glass prior to trial. To support its finding, the PCR court noted trial counsel believed the State would be performing a DNA test prior to trial, and she did not learn until "much later" the State would not be doing so. Moreover, it found trial counsel made a reasonable decision to proceed to trial without the DNA test because the results of the test could have damaged Bagwell's defense. Additionally, the PCR court found no prejudice from trial counsel's failure to test the glass because "the fact that DNA from the bloody glass did not match [Bagwell] did not mean[ ] [Bagwell] could not have been in the victims' apartment on the night in question." After the denial of PCR relief, Bagwell filed a petition for writ of certiorari, which this court granted on July 8, 2013.

## STANDARD OF REVIEW

 "The petitioner in a PCR hearing bears the burden of establishing his entitlement to relief." *Walker v. State*, 407 S.C. 400, 405, 756 S.E.2d 144, 146 (2014). "This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law." *Id.* (internal quotation marks omitted).

In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove trial counsel's performance was deficient, and the deficient performance prejudiced the applicant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show counsel was deficient, the applicant must establish counsel failed to render reasonably effective assistance under prevailing professional norms. *Id.* at 688, 104 S.Ct. 2052. To show prejudice, the applicant must show that but for counsel's errors, there is a reasonable probability the result of the trial would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. *Id.* However, "[a] 'reasonable probability' is less than a preponderance of the evidence. . . ." *Weik v. State*, Op. No. 27421 (S.C. Sup.Ct. filed July 23, 2014) (Shearouse

Adv. Sh. No. 29 at 42). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' " *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011).

## LAW/ANALYSIS

### I. Failure to Investigate

Bagwell contends trial counsel was ineffective for failing to request DNA testing for the pieces of glass prior to trial. He further argues he was prejudiced by trial counsel's deficiency because the State implied to the jury throughout the trial Bagwell cut his face running through the glass patio door and "touted this as the linchpin evidence to place [him] at the crime scene." We agree.

Counsel has a duty to undertake reasonable investigations or to make a decision that renders a particular investigation unnecessary. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, "[a] criminal defense attorney has the duty to conduct a reasonable investigation to discover all reasonably available mitigation evidence and all reasonably available evidence tending to rebut any aggravating evidence introduced by the State." *McKnight v. State*, 378 S.C. 33, 46, 661 S.E.2d 354, 360 (2008). Moreover, counsel's decision not to investigate should be assessed for reasonableness under all the circumstances with heavy deference to counsel's judgment. *Simpson v. Moore*, 367 S.C. 587, 597, 627 S.E.2d 701, 706 (2006). "[A]t a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." *Ard v. Catoe*, 372 S.C. 318, 331–32, 642 S.E.2d 590, 597 (2007) (internal quotation marks omitted) (emphasis omitted). "[C]ounsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions...." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052.

■ We hold trial counsel's failure to conduct DNA testing on the glass prior to trial constituted ineffective assistance of counsel. First, trial counsel's decision not to seek DNA testing prior to trial was unreasonable because the State used the glass as circumstantial evidence of Bagwell's guilt. *See Walker v. State*, 407 S.C. 400, 405, 756 S.E.2d 144, 147 (2014) (stating trial counsel has a duty to conduct a reasonable investigation or to make a reasonable decision that makes investigation unnecessary). Specifically, the State asserted in its closing argument Bagwell "could have cut his eye when he was running out [the victims' glass patio door;]" therefore, the State used the glass as evidence that placed Bagwell at the crime scene. Moreover, the evidence was reasonably available to trial counsel because she knew the State had the evidence prior to trial. *See McKnight*, 378 S.C. at 46, 661 S.E.2d at 360 ("A criminal defense attorney has the duty to conduct a reasonable investigation to discover all reasonably available mitigation evidence and all reasonably available evidence tending to rebut any aggravating evidence introduced by the State."). Trial counsel's explanation that she did not request DNA testing because she believed the State planned to do so was unreasonable because criminal defense attorneys have a duty "to make an *independent* investigation of the facts and circumstances of the case." *Ard*, 372 S.C. at 331–32, 642 S.E.2d at 597 (internal quotation marks omitted) (emphasis added). Her duty to test the blood from the glass was especially important here because the test results could have supported Bagwell's claim that he was asleep in his apartment at the time of the burglary. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 (stating counsel's conversations with the defendant may be critical when assessing counsel's investigation decisions). Although this court must give heavy deference to trial counsel's decision not to investigate, we find trial counsel's decision to not seek DNA testing prior to trial was objectively unreasonable. *Cf. Simpson*, 367 S.C. at 597, 627 S.E.2d at 706 (stating counsel's decision not to investigate should be assessed for reasonableness under all the circumstances with heavy deference to counsel's judgment).

■ Additionally, we hold trial counsel's failure to test the blood samples prior to trial was prejudicial to Bagwell. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (stating a PCR applicant must prove trial counsel's performance was deficient

and the deficient performance prejudiced the applicant's case to establish a claim of ineffective assistance of counsel). Initially, we note prejudice may be found because trial counsel admitted the results of the DNA test "may have affected" the outcome of Bagwell's trial. *See Pauling v. State,* 331 S.C. 606, 610, 503 S.E.2d 468, 471 (1998) (noting a court may find ineffective assistance of counsel when trial counsel admitted the testimony of a witness might have made the difference in obtaining an acquittal). Furthermore, the State's case against Bagwell was not strong. As trial counsel explained, Bagwell's trial was essentially a "swearing match" between the victims and defendants. The only direct evidence linking Bagwell to the burglary was Armstrong's testimony that he saw Bagwell exiting the apartment through the glass door. However, the State referenced the broken glass door several times at trial to corroborate Armstrong's testimony and infer Bagwell was inside the victims' apartment. During its opening argument, the State asserted, "The evidence will show that after [Armstrong] entered[, Bagwell] became upset and ran out the patio glass door. The patio glass door which had been shattered moments before." Additionally, the State admitted a photograph that shows Bagwell's face scarred with blood streaming down the left side of his face, and Armstrong and Snoddy testified Bagwell appeared that way before Armstrong punched him. The State also introduced a picture of the broken glass door that the perpetrator ran through and a picture of the broken glass from the shattered patio door. Importantly, the State asserted to the jury in its closing argument,

> Some other testimony that's important for you to remember. If you remember both [Snoddy] and [Armstrong] said that when they went over to [Bagwell]'s apartment and he was out front, when they went over there they both saw a scratch on his top eye and blood. A little blood trail coming down the side of [Bagwell's] face. Now how did he get that? How did [Bagwell] get that? How did he get this right here? How did he get this cut? One way he could have gotten this cut, ladies and gentlemen, one way is if when he ran out, ran through the glass in a hurry, see the arc on this glass? He could have cut his eye when he was running out. When [Armstrong] startled them when they came back.

Although the DNA test results indicating Bagwell's blood was not found on the pieces of glass do not exonerate Bagwell or preclude the possibility of his guilt, we believe the jury more likely than not would have reached a different verdict had this evidence been presented at trial. *See Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011) (recognizing *Strickland* prejudice "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case' "). The evidence would have rebutted the State's theory that Bagwell cut his eye while exiting the victim's apartment through the glass patio door. Furthermore, it would have cast doubt on Armstrong's and Snoddy's testimonies that Bagwell's face was bleeding before Armstrong punched Bagwell. Likewise, the evidence would have supported Bagwell's testimony that he was in his apartment at the time of the burglary and his face was bleeding because Armstrong attacked him.

Considering the lack of evidence other than Armstrong's testimony, the repeated references to the glass by the State, and the importance of witness credibility at trial, we find that but for trial counsel's failure to test the blood samples, there is a reasonable probability the result of Bagwell's trial would have been different.[4] *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (stating that to show prejudice, the applicant must show that but for counsel's errors, there is a reasonable probability the result of the trial would have been different). Accordingly, we hold trial counsel was ineffective for failing to request DNA testing on the glass prior to trial.

## II. Failure to Argue Rule 608(c), SCRE

█ Bagwell argues trial counsel was ineffective for failing to present the proper legal argument to the trial court, so that

---

4. Bagwell also claims he is entitled to a new trial because the DNA test results constitute after-discovered evidence. Because we reverse the PCR court's finding that trial counsel was not ineffective and grant Bagwell a new trial, we decline to address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

Daryl's brother, Jerry Spain, could testify Armstrong was angry with Daryl because Daryl revealed to a mutual neighbor that Armstrong was selling marijuana from his apartment. Specifically, Bagwell argues Jerry's testimony was admissible under Rule 608(c), SORE, to show Armstrong's bias and motive to fabricate the allegations against Bagwell and Daryl. We disagree.

At trial, Daryl's counsel called Jerry to testify about statements Armstrong made to Jerry two days after the burglary. The State objected, arguing Jerry's testimony was inadmissible under Rule 613, SORE, because Daryl's counsel failed to lay a proper foundation and did not ask Armstrong whether he made these prior statements to Jerry. The trial court sustained the objection, ordered the jury out of the courtroom, and allowed Daryl's counsel to proffer Jerry's testimony.

During the proffer, Jerry testified he went to Bagwell and Daryl's apartment two days after the burglary and found Armstrong standing outside his apartment. Jerry stated he was unaware Bagwell and Daryl had been arrested for burglary, and he asked Armstrong "what went on." Armstrong told him Daryl broke into Armstrong's apartment. According to Jerry, Armstrong became angry when he found Daryl in his apartment and he went over to Bagwell and Daryl's apartment with a gun, "[a]nd [Bagwell] was in the recliner and [Armstrong] said he hit [Bagwell] against the head with the butt of his gun." Jerry further stated Armstrong told him he then went outside the apartment, beat Daryl, and dragged him around the apartment complex parking lot. Finally, Jerry testified Armstrong told him he wanted to kill Daryl and was angry with him because he previously told a resident at their apartment complex that Armstrong was selling marijuana.

Thereafter, the trial court ruled Jerry's testimony was inadmissible under Rule 613(b), SCRE.

At the PCR hearing, Bagwell asserted Jerry's testimony that Armstrong was angry with Daryl for telling a neighbor that Armstrong sold marijuana would have provided a motive for Armstrong to fabricate the burglary allegations against Bagwell and Daryl. Trial counsel testified she interviewed Jerry, but she never intended to call him as a witness because there was "some deviation" between his testimony and Bag-

well's testimony. Trial counsel further testified she did not argue Jerry's testimony was admissible under Rule 608, SCRE; however, Daryl's counsel argued the testimony was admissible under Rule 613, SCRE.

The PCR court found trial counsel was not ineffective for failing to argue Jerry's testimony was admissible to show Armstrong's bias and motive to fabricate the allegations against Bagwell and Daryl. Specifically, it found Bagwell failed to prove prejudice because Jerry did not testify at the PCR hearing.

We find the PCR court did not err in finding trial counsel was not ineffective for failing to introduce Jerry's testimony at trial. On direct appeal, this court held that any error in excluding Jerry's testimony was harmless because physical evidence corroborated Armstrong's and Snoddy's testimony,[5] and counsel for Bagwell and Daryl were allowed to cross-examine Armstrong and Snoddy. *See State v. Bagwell*, Op. No.2007–UP–377, 2007 WL 8327957 (S.C. Ct.App. filed Sept. 18, 2007). Because this court previously found that any error in excluding Jerry's testimony would be harmless, we find Bagwell has not shown that but for trial counsel's failure to properly argue for the admission of this testimony, there is a reasonable probability the result at trial would have been different. Accordingly, we hold the PCR court properly determined trial counsel was not ineffective as to this issue.

## CONCLUSION

In conclusion, we hold the PCR court erred in determining trial counsel was not ineffective for failing to request DNA testing on blood found on glass recovered at the crime scene. We further hold the PCR court properly determined trial counsel was not ineffective for failing to introduce Jerry's testimony at trial. Accordingly, we reverse the denial of PCR and find Bagwell is entitled to a new trial.

**REVERSED.**

KONDUROS, J., concurs.

---

5. We note with interest that the only physical evidence linking Bagwell to the crime was the blood on Bagwell's face, which the State argued was from a cut Bagwell received when he exited the apartment. However, the DNA evidence Bagwell presented to the PCR court tends to refute that argument.

WILLIAMS, J.

I concur with the majority's opinion that Bagwell was not prejudiced by his counsel's failure to properly argue for the admission of Jerry Spain's testimony. I also agree with the majority's finding that Bagwell's trial counsel was deficient in failing to request DNA testing on the blood from the broken glass found at the crime scene. However, I disagree with the conclusion that Bagwell was prejudiced by his counsel's failure to request DNA testing on the blood from the broken glass found at the crime scene.

"In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove: (1) that counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) that the deficient performance prejudiced the applicant's case." *Porter v. State,* 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006); *see also Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, the applicant must show that "but for counsel's errors, there is a reasonable probability the result of the trial would have been different." *Johnson v. State,* 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Id.* at 186, 480 S.E.2d at 735; see also *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

I do not believe Bagwell has shown his counsel's failure to request DNA testing prejudiced his case. At trial, the State produced witness testimony and photographic evidence that Daryl Spain sustained multiple lacerations on the bottom of his feet on the night of the robbery. Snoddy also testified that Daryl Spain was barefoot when he exited the apartment through the shattered glass door. The cuts on Daryl Spain's feet provide a reasonable alternative explanation for the presence of blood on the glass pieces collected from the scene. In fact, Daryl Spain's lacerations, which were likely inflicted when he attempted to exit the apartment barefooted, are a more plausible explanation for the presence of blood at the scene of the crime than the "scratch on [Bagwell's] top eye." However, the blood on the glass collected from the scene was only tested for a match with Bagwell's DNA; it was never tested for a match with Daryl Spain's DNA. Without also

proving the blood does not match with Daryl Spain's DNA, this evidence would not necessarily exonerate Bagwell. Moreover, at his PCR hearing, Bagwell failed to establish the bloody glass pieces later tested for his DNA were collected from the arch of glass remaining in the doorway, which was allegedly depicted in the photograph entered into evidence by the State.[6] The tested glass pieces could have easily been collected from the shattered glass covering the apartment floor, which would have supported the State's version of events presented at trial. Without further information to accompany the DNA testing results, the State's theory of the case is unaffected by the DNA evidence because the bloody glass could still be attributed to Daryl Spain's injuries. Accordingly, I find there is not "a reasonable probability the result of the trial would have been different" if this DNA evidence had been introduced at trial. Johnson, 325 S.C. at 187, 480 S.E.2d at 735.

Ultimately, this case was presented to the jury as a "swearing match" between the victims, Armstrong and Snoddy, and the alleged burglars, Bagwell and Daryl Spain. This case turned on credibility, and the jury found the former to be more credible than the latter. As noted in the majority's opinion, the DNA testing results do not exonerate Bagwell or preclude the possibility that he participated in the burglary. Further, as explained above, the State's version of events is unaffected by the presence of blood that did not belong to Bagwell at the scene of the crime. Thus, I would find Bagwell failed to establish that if his counsel had introduced the DNA results at trial, there is "a reasonable probability the result of the trial would have been different." Johnson, 325 S.C. at 187, 480 S.E.2d at 735.

Based on the foregoing, I would hold that Bagwell's case was not prejudiced by his trial counsel's errors, and the PCR court properly dismissed his PCR application.

---

6. The photograph depicting the shattered glass doorway allegedly showing blood on the remaining glass was not included in the record.