**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Boyd Rashaeen Evans, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-001287

---

**ON WRIT OF CERTIORARI**

---

Appeal From Lexington County
J. Mark Hayes, II, Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-099
Submitted May 8, 2020 – Filed March 31, 2021

---

**AFFIRMED**

---

Appellate Defender Susan Barber Hackett, of Columbia, for Petitioner.

Attorney General Alan Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General William Joseph Maye, all of Columbia, for Respondent.

**PER CURIAM:** In this post-conviction relief (PCR) action, Boyd Rashaeen Evans (Petitioner) argues the PCR court erred in finding he was not prejudiced by trial counsel's deficient examination of an alibi witness. We affirm.

**Facts and Procedural History**

On November 26, 2007, the Lexington County Grand Jury indicted Petitioner for armed robbery, possession of a weapon during the commission of a violent crime, possession of a pistol by a person under the age of twenty-one, and two counts of kidnapping. Petitioner and his co-defendant, Lywone Capers, pled not guilty and appeared for a jury trial on January 11, 2010. Ultimately, the jury acquitted Capers of all charges[1] and found Petitioner guilty of armed robbery, kidnapping, and possession of a weapon during the commission of a violent crime.[2] The circuit court sentenced Petitioner to concurrent terms of imprisonment—twenty-one years for armed robbery, twenty-one years for kidnapping, and five years for the weapon charge.

Thereafter, Petitioner's counsel filed an *Anders*[3] appeal; this court dismissed the appeal and relieved counsel. *State v. Evans*, Op. No. 2012-UP-299 (S.C. Ct. App. filed May 16, 2012). Petitioner subsequently filed an application for PCR, alleging his trial counsel was ineffective for failing to adequately present his alibi defense and for unreasonably advising Petitioner not to testify at trial. Petitioner appeared for an evidentiary hearing on January 15, 2016, after which the PCR court dismissed Petitioner's application.

**Standard of Review**

---

[1] Capers presented four alibi witnesses, all of whom testified Capers was at home in Charlotte throughout the day and at the time of the robbery. They recalled that Capers was sick and that his aunt brought over some soup and medicine for him.

[2] The trial court directed a verdict on one kidnapping charge, and the State *nolle prossed* the charge of possession of a pistol by a person under the age of twenty-one.

[3] *Anders v. California*, 386 U.S. 738 (1967).

"Our standard of review in PCR cases depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them."  *Id.*  "We review questions of law de novo, with no deference to trial courts."  *Id.* at 181, 810 S.E.2d at 839.

**Law and Analysis**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  To prove ineffective assistance of counsel, a petitioner must prove trial counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, there is a reasonable probability that the result would have been different.  *Id.* at 691–94.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Id.* at 700.

Here, video evidence shows four armed males, all with their faces covered by a mask or shirt, entered the Pitt Stop Convenience Store at 12:34 AM, held a clerk hostage, stole approximately $200 from the cash register, and exited the store at 12:35 AM.  Trial testimony from Petitioner's sister, Glynnessa Evans (Sister 1), revealed that Petitioner and some of their cousins arrived unannounced from Charlotte to visit Sister 1 at her Lexington County home on the afternoon of the robbery.  The following day, Detective Edward Prestigacomo of the Lexington County Sheriff's Office went to Sister 1's house and showed her photographs pulled from the surveillance video of the robbery.  The robbery occurred less than a mile from Sister 1's home, and she identified Petitioner and her cousins from the video stills.[4]

At trial, Sister 1, who testified in the State's case in chief, explained she was able to identify Petitioner as the man in the photographs by the scar on his shoulder, the blue Ford Explorer he drove to her house, and the clothes—a black tank top and dark pants—he was wearing that day.  She further testified that after reviewing the Pitt Stop surveillance video, she could identify both Capers's and Petitioner's

---

[4] Sister 1's fiancé, Michael Rhaney, worked at the Pitt Stop during the time period the robbery took place.  He testified he worked from 3:00 PM until 11:00 PM on the evening of the robbery.  Rhaney first identified Petitioner to Detective Prestigacomo, who then met with Sister 1.

voices.  Sister 1 admitted she would not be able to pick Capers out of a crowd but stated she recognized his nose, eyes, and voice on the video.

Petitioner called his other sister, Cherise Evans (Sister 2), to testify in his defense. Sister 2 testified Petitioner picked her up after her shift at Church's Chicken in Charlotte on the night of the robbery, but trial counsel did not ask the specific time Petitioner picked her up from work.

Although Petitioner expected Sister 2 to testify at his PCR hearing, she did not appear.  Petitioner had not subpoenaed Sister 2, and the PCR court declined to hold the record open to consider Sister 2's testimony at a later date.  Petitioner testified he dropped Sister 2 off at work in Charlotte at 9:00 AM on July 25, 2007, and picked her up at midnight.  He stated he remained in the Charlotte area the whole day and spent the evening at home with friends and family.  Petitioner admitted he had a scar similar to the one seen in the Pitt Stop video, and that the robbery happened around 12:20 AM.  He acknowledged Sister 1's fiancé testified for the State that Petitioner was in a blue Ford Explorer in Lexington County on the day of the robbery and that a blue Ford Explorer can be seen in the surveillance video.

Trial counsel testified he had a "good recollection of the case," but ultimately he and his investigator could not find any of Petitioner's other alibi witnesses.  Trial counsel's notes from an interview with Petitioner indicate Petitioner picked up Sister 2 from work in Charlotte around 1:00.  He inferred that meant 1:00 PM but stated, "She was working at Church's, the 21st through the 28th, until close, so maybe that's one in the morning."  Thereafter, the PCR court found trial counsel was deficient for failing to question Sister 2 about the specific time Petitioner picked her up from work in Charlotte on the night of the Lexington County Pitt Stop robbery.  However, the circuit court denied the application, finding Petitioner failed to show prejudice because even with the additional alibi information, he could not demonstrate a reasonable probability that the outcome of his trial would have been different.

Whether trial counsel was deficient is not at issue in this appeal.  Relying on *Bannister v. State*, 333 S.C. 298, 509 S.E.2d 807 (1998), the State contends Petitioner cannot show prejudice because he failed to produce Sister 2's alibi witness testimony or otherwise offer her testimony in accordance with the rules of evidence at the PCR hearing.  In *Bannister*, our supreme court explained it has "repeatedly held a PCR applicant *must produce the testimony* of a favorable witness or *otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice with the witnesses' failure to testify at trial."  *Id.* at 303, 509 S.E.2d at 809; *see e.g.*, *Pauling v. State*, 331 S.C. 606, 503

S.E.2d 468 (1998) (holding an applicant established prejudice where nurse's notes presented at PCR hearing corroborated lack of penetration in sexual assault case); *Glover v. State*, 318 S.C. 496, 458 S.E.2d 538 (1995) (determining that where witnesses applicant claimed could have provided an alibi defense did not testify at the PCR hearing, he could not establish any prejudice from counsel's failure to contact these witnesses); *Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20 (1992) (finding an applicant failed to establish prejudice where he did not offer witnesses at PCR hearing but merely alleged they would have provided him with an alibi defense and testified victims had recanted their trial testimony). "The applicant's mere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice." *Glover*, 318 S.C. at 498–99, 458 S.E.2d at 540.

Here, Sister 2 testified at trial and trial counsel had his own notes of the information he expected her testimony would include. The State did not object to the admission of trial counsel's notes regarding Sister 2's proposed testimony. We find the notes were sufficient to properly present this allegation to the PCR court. Nevertheless, these notes do not relieve Petitioner of his burden of proof to satisfy the prejudice prong of the PCR analysis. *See Bannister*, 333 S.C. at 303, 509 S.E.2d at 809 (1998) ("The State's failure to object to [the petitioner's] testimony as to [the witness'] alleged testimony does not relieve respondent of the burden of producing and/or offering [the witness'] testimony in accordance with the rules of evidence."). Trial counsel's notes were unclear as to whether Petitioner picked Sister 2 up from work at 1:00 PM or 1:00 AM. The only evidence presented at the PCR hearing to provide the substance of Sister 2's testimony−other than the trial transcript−was Petitioner's own testimony and trial counsel's note, *which came from an interview trial counsel had with Petitioner, not Sister 2*.

Petitioner's situation differs from that in *Martin v. State*, 427 S.C. 450, 453, 832 S.E.2d 277, 278–79 (2019), in which the petitioner failed to present his mother's alibi testimony at his PCR hearing. There, our supreme court recognized, "[o]rdinarily the absence of a purported alibi witness is fatal, but in this case counsel admitted they were aware of the specific timeline furnished by the mother, yet failed to introduce it." *Id*. However, in *Martin*, trial counsel's file contained mother's own statement as to the alibi, including the specific time mother claimed she dropped Petitioner off at a bus stop in Atlanta. Here, trial counsel merely had notes from a conversation with Petitioner as to the timeline Sister 2 would have provided had she been specifically asked.

Other than Sister 2's trial testimony, Petitioner failed to offer any evidence contradicting the testimony from the State's witnesses, specifically, Rhaney's testimony addressing Petitioner and the blue Ford Explorer on the surveillance tape and Sister 1's testimony identifying Petitioner by his clothing, voice, vehicle, and the shoulder scar seen on the Pitt Stop's video footage.[5]  Thus, evidence in the record exists to support the PCR court's finding that the end result at trial would have been the same even if trial counsel had elicited testimony from Sister 2 providing the exact time Petitioner allegedly picked her up from work in Charlotte on the night of the robbery.

**Conclusion**

Because evidence supports the PCR court's finding that Petitioner failed to prove he was prejudiced by trial counsel's deficient examination of his alibi witness, the decision of the PCR court is

**AFFIRMED.**[6]

**HUFF, THOMAS, and MCDONALD, JJ., concur.**

---

[5] Trial counsel was able to cross-examine Sister 1 as to her prior conviction for involuntary manslaughter as well as her dispute with Petitioner's adoptive mother over custody of Sister 1's daughter, arguing Sister 1 was biased against Petitioner and his side of the family.  However, trial counsel simply had no way to challenge the video evidence because "[t]he problem was this person decided to wear a tank top and ski mask and it's an exact body and build frame of Boyd Evans and it has the birthmark or the scar tissue, whichever it is, on his left shoulder and it's dead-on in the camera on multiple angles."

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.